Please call the next gate. Mr. O'Krake, you may proceed. I got to say thank you first for allowing the brief to be filed. I really do appreciate that because this is a big issue for us. So I don't forget, I want to make sure I say thank you to Ms. Baumann who wrote the brief for EDLA because that helped me train these issues a lot. Obviously we're talking about duty. You know the facts. I won't go through the facts because you have specific questions. I'm stating that in this case, in the Coleman case, there is a duty based on at least four different sets of reasons why there should be. The first is that each of the defendants increased the risk of harm to the plaintiff. We're going to go through this. The second is now a Supreme Court case that wasn't available when you wrote the Donovan decision, the Jane Doe 3 case which came out in August of last year. The third is the duty under the EMS Act and the ETS Act which I believe is there and will explain why through American National Bank. And the last is that if you state that the public duty rule does apply under these 9-1-1 circumstances under the EMS Act, then according to American National Bank, we've met the special duty exception for 9-1-1 situations. Regarding the first reason, I think there's a duty on the increased risk of harm, we know that under the Watkledge case in Illinois, we adopted the statement for Section 323A. Mr. O'Kreek, if the council is having a hard time seeing, I think we can all see, if you could move it back, it might be more convenient. How far back? Kind of like an eye test for us. Can we still see it? Can you council see? If you're not, move over to the other council table if you'd like. Your Honor, can I have the motion for it? I can see it from here. Sure, whatever is comfortable for you. Yeah, that's fine. But grab a chair if you want to, too. Okay. You're all welcome. Thank you. Under 323A that we've adopted, anyone, one who undertakes fortuitously or for consideration to render services to another, to the protection of another, is subject to liability if he increased the risk of harm or the harm was suffered because of reliance. I'm stating that we have that under the situation with Coleman, that each one of the defendants increased the risk of harm to her. In fact, we read the information and it did. You see where the harm was increased each time. So we have the voluntary undertaking. Now, a question you may want to ask, if I was sitting there as a justice right now, I'd say, well, was this a voluntary undertaking? Because one of the defendants said it can't be voluntary if the fire department was set up as a member of the statute. And I'm saying it can't because under the restatement of courts, the comments in section 323 apply to everyone. It's not limited to people who are just doing this fortuitously. It applies to anyone and everyone who renders services to another for the protection of that person if they increase the risk of harm. And when we also deal with voluntary, on a voluntary undertaking, according to case law, we look at the scope of the undertaking to see what was undertaken. And here it was to provide emergency medical services in a 9-1-1 set. So I think we have a duty in this case here because in this case the defendants increased the risk of harm to Mrs. Coleman, Greg Coleman. Another reason that we have for a duty in this case, which is different than what you had in Donovan, according to Jane Doe Treaty, which the Supreme Court just came out with in August of last year, they did not answer the public duty rule question but set the science. And it's of no moment in this case, as I'm saying here, under Jane Doe Treaty, every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of their acts. Everyone owes that duty. What did the Supreme Court look at last August? The relationship between the parties. And it's of evidence so I don't forget. If you had Donovan today, those facts again in front of you today, you would come up with the same result because under Donovan the relationship test would not have been satisfied. What's the relationship test that we're talking about? The foreseeability of injury, the likelihood of injury, the burden of guarding against the injury, and the consequences of placing the burden on the defendant. In the Coleman case, clearly for each defendant, there's a foreseeability of injury, a likelihood of injury. My goodness, when someone's calling for 911 for the breathing problem, they need help, hurry, please, give them your address, there's certainly a likelihood of injury if you hang up on the person, if you dispatch to the wrong address, if you're sending an ambulance to the wrong place, there's certainly a likelihood of injury. What's the burden of guarding against? Nothing. You just do your job. That's very simple. And the consequences of placing the burden on the defendant are none or negligible. You just do what you're supposed to do in this case. In Jane Doe 3, the Supreme Court did not apply the public duty rule to the case. There are two reasons. I'm going to go over that. The first is the Supreme Court said the failure to protect wasn't alleged, so the public duty rule was at no moment. In the Coleman case, in my complaint, I did not allege either that there was a failure to protect. I didn't do that. What I'm stating is each of these people effectively, by their act, increased the risk of harm to the plaintiff, and if you look at the relationship test now that the Supreme Court laid out last August, we met all four prongs of the test issued in duty owed to Mrs. Coleman by the defendants. Again, if I were in your shoes and not mine, I would also say, though, Mr. Oakley, wasn't the Jane Doe 3 case dealing with children? And don't we have to make sure we protect children? And I have to state, absolutely, we do. As a state, we have to do that. But I think that we can also state that we have an obligation to also protect people in a 911 setting who are calling because they can't breathe. Under the relationship test and under the fourth prong of that test, the consequences, under your theory, once a 911 call is made and anything adverse happens to the caller or the caller's agent, there's a possibility of a lawsuit, isn't there? No, not if anything happens. I think under the circumstances of this case, where the defendants increased the risk of harm to the person, then I think that the consequences of placing the burden on the defendant are negligible. I can't say in every case. I can state, Justice Carter, in this particular case right now, for example, when you have the fireman stating that to the neighbors, you can't come in here. You can't do that because the police aren't here. That's deterring the conduct. That would have been so easy. It wasn't true. Why would you say that? Why would you report, Justice Carter, why would you say to Orlin Callback, there is no patient? How can you say there's no patient unless you find out if someone is there or not? And what does Orlin do? Orlin hears there is no patient. We're not going to tell you about the busy signals. We're not going to tell you about the information that we have. Why? Because you said there is no patient. The consequence of placing that burden on the defendant is nothing. I don't see how that could be, Judge. I really don't. In this setting, I think there's also a duty under the EMS Act and the ETS Act, the Emergency Medical Services Act, as well as the 9-1-1 Act. Why? The legislature made it real clear in both of those acts that if you are guilty of willful and wanton conduct, there could be responsibility. If you just said that in a 9-1-1 setting, the public duty rule is always going to apply, no person in the whole world would have a claim. As we're here right now in this court, I will bet anyone any amount of money that Roger's not going to come in here and say, hey, we have a call from 9-1-1, because you can't initiate the call or you wouldn't have coverage. We just want to know if someone's having a subarachnoid hemorrhage or asthma attack or a heart attack or a stroke. To apply under the special duty exception to the public duty rule this requirement that the injured person can't initiate the call, it's illusory, it's meaningless, it makes no sense whatsoever in a 9-1-1 setting. So what I'm stating is that the Emergency Medical Services Systems Act and the ETS Act, to require someone to be under this blanket of the public duty rule would make no sense in the eyes of what the legislature did by providing for responsibility in this willful and wanton conduct. Otherwise they would never have a situation where someone who's calling for help could ever have the protection and the benefit of the willful and wanton provisions of those acts. You couldn't, because they wouldn't be initiating the call. So I think legislatively, under the EMS Act and the ETS Act, there should be responsibility. American National Bank, this is a big one. You folks did not address this in your time of independence. You just didn't address American National Bank. Maybe it wasn't raised, but it's so important to me. This is one of the big arguments we brought forward to Judge Powers in our response to the motion. You couldn't have closer facts. In American National Bank, it was that young gal over there, Cass Morosky, who called the city of Chicago, I can't breathe, having a asthma attack, please hurry. The fire department went there, just like our case, where Mrs. Coleman said I can't breathe, hurry. The fire department comes out there, nothing happens. No one goes in, they don't find the patient. In American National Bank, on page 278 of the opinion, at the trial court, the trial court said no special duty was alleged, so we're throwing it out. The public court said the plaintiff did adequately allege special duty, and that also is referenced on page 278 of American National Bank. In the Supreme Court opinion, they allowed the American National Bank case for Mrs. Cass Morosky to proceed on pleadings, and they did not expressly mention the public duty rule. It was the dissent, of course, in the 4-3 decision that mentioned the public duty rule. In the dissenting opinion, it was criticized and said, well, how can you let an ambulance 9-1-1 case go forward? Don't you know that this person initiated the call themselves when they called 9-1-1? The special duty exception couldn't be satisfied if someone in peril calls for help, but the majority didn't buy it. Oh, boy, I better talk fast, okay? Public duty rule itself. Different lines of cases. CUNY line of cases says it does apply. We know all those cases against Cicero. The courts also, the Supreme Court codified it, I think, or applied the public duty rule to the statute center. Burgundy v. Glendale Heights, a swing pool case. Parkland v. Hyde Park, just a swing pool case. Moore v. Green, a domestic violence case. De Smet avoided it and said, no, it's all part of the immunity statutes. I'm saying under Chango 3 now, which came out of August last year, I think the court's going to say, look at the facilities. Under the special duty exception, I think American National Bank makes it different when you have a 9-1-1 case than any other case because that is a decision of the American National Bank. How can we charge the person calling for help, saying you don't have a positive reaction because you called for help? 9-1-1's not going to call them first to see if they're okay. I think that was settled by our Supreme Court in Abruzzo. The Abruzzo case said that the EMS Act immunities are much more specific than the Tort Immunity Act, and it's about 30 years newer than the statute. So I think under Abruzzo, because we have a more specific statute and a more current statute than we do with the Tort Immunity Act, immunities can be EMS Act compliant. Local and wide conduct, we have plenty of facts listed there. Thank you, Mr. Oakley. Counsel, I believe in response you provided your time up into equal segments of five minutes. Correct. If that's correct, Mr. Dunolfo, you may proceed. If we support, counsel, given my limited time, I'm going to try to address each of the issues raised by Mr. Oakley in a succinct manner. First and foremost on the voluntary undertaking. The negligence standard is what voluntary undertaking is, and Mr. Oakley in his brief specifically said on page 7, negligence is not the standard to hold any defendant accountable in this case. So that being said, I think by his own admission, the voluntary undertaking approach is baseless. Second, he conveniently ignored the Torres case in the city of Chicago, which I think is key to address the fact that the court in Torres looked at voluntary undertaking, and really what they looked at was the police officers were not acting in their capacity as police officers at the time they got involved dealing with injured individuals. They were acting as private citizens. We don't have that here. The allegations in the complaint were that at all times the defendants were acting in their official capacity as, in my case, firefighter paramedics. In addition, there was an allegation that troubled the court that they deterred others from helping. We have just the opposite here from the facts of the case. They encouraged the neighbors to break in.  None of the facts that existed in Torres exist in this case, especially given that all of our individuals involved in this case were acting in their official capacity as the complaint alleges. In addition, there's no way that they can establish the two prongs of reliance or that the performance actually increased the risk of harm. It's not in the record. It's pure speculation. My clients had no contact at all with Ms. Coleman. They were sent to an unknown medical. They went to the scene. They performed some activities consistent with their training. Were not able to verify a patient and left. The very nature of the call being unknown does not give us enough information to be a voluntary undertaking. Further, the restatement that Mr. Oakley cites allows us to begin a voluntary undertaking, if you were to believe that approach, which I think is baseless, and then to stop. Because there is no evidence to make anything worse. The record is void of any information to that effect. And just like, unlike the Torres case, we were acting within our scope as firefighter paramedics at all times. Torres, they acted outside the scope of police officers, and the court found that important in their decision in that matter. Public duty rule. The Fire Protection District was created to serve the public at large. It's well established in this state that the municipalities serve the public at large and not one individual. And that the public entity cannot be held liable for insufficient services. Now, counsel spends a lot of time saying that the Jane Doe case somehow calls into question the public duty rule. There's a lot of speculation there, and as a matter of fact, the court's own ruling says we're not dealing with the public duty rule. And really, rather than trying to guess about the public duty rule, why don't we go to a Supreme Court case which says it's alive and well, and that starts with the Zimmerman case. The Supreme Court made it clear the public duty rule is in existence, is viable, and valid in the state of Illinois. Don't try to speculate what the Jane Doe court might, could, or should have done, because they're very clear that they did not address the issue of public duty. They're looking merely at the facts, and it's solely limited to the allegations in the complaint. I respectfully disagree with Mr. Oakley that he didn't make allegations in his complaint about the fact that we failed to protect, failed to take action, failed to do affirmative things that we were responsible for doing. I think the complaint is replete with allegations about our failure to do things we were obligated to do, from training, to forcing entry, to a variety of other things that he says we affirmatively had to do. So I think in that case, we do have an affirmative allegation of a duty and an affirmative failure to protect set forth in that complaint. Therefore, the public duty rule, special exception, can't be satisfied. We were not uniquely aware of any particular danger to her. Unknown medical call was what we were dispatched. Could be anything. Didn't even know it was a female, male. We have no information where the call came from, no information about a business signal, no additional information. We looked. We got information from the neighbors who said the husband who has medical problems, his car is gone. And American National Bank, I'll just touch on that briefly. There's one important distinction in that case, and that is the city of Chicago had a written policy to try before you pry, meaning that they were obligated to try all the doors. We don't have such a written policy. We don't have a policy that says you have to force entry. I think that's an important distinction because the court may have mentioned that violation of your own policies could constitute willful wanton conduct for purposes of pleading. And that is a pleading case, not a motion for summary judgment case, which I think is an important distinction. Lastly, I refer back to the fourth prong of special duty, which is they were not under our control at any time by the East Joliet Fire Protection District. And given your ruling in Donovan and the first district ruling, that is an important element. And I agree with Your Honor that taking his approach, anytime somebody calls 911, everybody in that chain would then be liable for any inappropriate conduct that arises therefrom. I ask that you affirm the circuit court's ruling. Thank you. Thank you, Mr. Donovan. Ms. Kearney? Yes, Your Honor. May it please the court, on behalf of Orland Fire Protection District and Aaron Johnson, I would like to briefly address two points, if I may. The first is Jane Doe. With all respect to Mrs. Coleman's attorney, I believe that that case is smoke and mirrors here. As the Supreme Court said in Jane Doe 3, the public duty rule is of no moment in that case. And they went on to, using their word, emphasize that their holding in Jane Doe 3 was limited to a finding of duty under the particular circumstances that were presented. And as Your Honors know, those circumstances were that teaching authorities or school authorities deliberately falsified an employment verification form of a teacher that allegedly they knew had been guilty of sexual misconduct. The court said that in analyzing duty, all analysis of duty in a tort case turns on policy considerations. They then went on to say that Illinois has a specific public policy favoring the protection of children against sex offenders. And that that particular policy was what weighed in favor of finding a duty under the particular facts of the Jane Doe case. Here, we have a very different public policy. The policy as articulated in Zimmerman and Donovan says that we don't want to make people who are serving the public welfare generally into the insurers of individual members of the public. By extension here, we don't want to make everyone involved in the emergency telephone system or EMTs the insurer of every particular person who may need to call 911. I would also like to address this notion that by enacting the ETS and the EMS, the legislature somehow implied that there was a duty for the people who participate in operation of that system towards individual members of the policy. The Supreme Court specifically rejected the proposition that a governmental immunity statute can be read to create a duty. They said that in Village of Bloomingdale that was cited in our brief and the First District reiterated that holding in their Ware case. Zimmerman also instructs us that the existence of duty and immunity are two entirely different matters. As the Third District said in Donovan, first you need to decide if someone has a duty towards someone else. And if you find a duty, it is then that you get to whether an immunity applies. So it is not true that by limiting liability in the ETS statute and the EMS statute to liability for willful and wanton conduct, that somehow implies that there is a duty. As we have heard, there is a special duty exception to the public duty rule. So it is conceivable, and the courts have applied the public duty rule, but they may find that the special duty exception applies. It is only then that you get to whether or not there is an immunity under one of the statutes. Here I think it is very clear, and as the circuit court found, the special duty exception does not apply. None of the defendants had any immediate control over Mrs. Coleman during any of the events that led to her unfortunate death. And certainly for Orlin Fire and Mr. Johnson, they had no unique awareness of her medical condition or her medical emergency. For those reasons, Your Honor, if there are no questions, I would request that you affirm the judgment of the circuit court. I don't believe there are. Thank you, Ms. Kiernan. Thank you, Your Honor. Mr. Clancy, you may respond. Good morning. May I please support Kevin Clancy on behalf of Defendants Will County and Lori Zand? I'd like to go back to the concept of the voluntary undertaking here for just a minute. Counsel for the Plaintiff focuses very heavily, and I would say exclusively, on the argument that the actions of the defendants increased the risk of harm to Mrs. Coleman. And you'll find that phrase, increase the risk of harm, marveled throughout the Plaintiff's brief in almost every argument, every section of the argument. But I think what's missing here is that the voluntary undertaking argument fails for a more fundamental and a more threshold reason, and that is that the actions of the defendants in this case are not, in any sense, the word voluntary. They are actions that are taken pursuant to a regulatory and statutory framework. And there's no case law in Illinois, and none cited by the Plaintiff, certainly, in which a municipal or a government employee has been held to a standard of a voluntary undertaking for doing something that is required under the statutory framework. I think the amicus brief in this case is very instructive for the case of the defendants. What the amicus says is that there is a duty here, and this is a direct quote, it is not a duty to do anything other than what is contemplated by the ETS Act or the EMS Act. That, I think, is an admission, or at least a concession, that what we're talking about here is doing nothing more than what the statutes require you to do, and that's not voluntary. Counsel focuses on this distinction between gratuitous or for compensation. That's true. That's in the restatement. The voluntary undertaking can be something that is done gratuitously or for compensation, but merely having done something for compensation doesn't automatically trigger the fact that it was done, that it wasn't voluntary. And, in fact, the cases we cited, the Ficktell case and the Combs cases, and both of those, the insurance inspector and the insurance company and the other, they were doing actions. They were being paid for their actions. The court, nonetheless, found that there wasn't a voluntary undertaking because what they were doing is something they were already required to do. The Torres case is really just, I believe, an anomaly for the reasons that Mr. DeNalso stated. I think that it's qualitatively different. The court in that case started out by saying, we assume that there was no preexisting duty to do anything here. And that they were acting in the role of private persons. What they did was they were police officers, they got to the scene, and at that point they're not in pursuit of any criminals. What they're doing is they affirmatively start to assist the victims of the shooting, and the court says, boom, at that moment, once you've started to do that, you've undertaken a duty to assist those victims in a manner that's not negligent or willful among persons toward immunity. I also think that a voluntary undertaking argument is wholly unnecessary. We have the concept of a special duty exception to the public duty rule, and the factors align very similarly for the voluntary undertaking. Is the person in your direct and immediate control? Are you taking affirmative acts? Do you have any unique awareness? There's no reason to follow the plaintiff down the voluntary undertaking rabbit hole because we have the special duty exception to accommodate those concerns. I'd like to point out also with regard to the public duty rule, I really think that this case is very analogous to the Donovan case. That case was handed down at a time when American National Bank had already come down.  In Donovan, you have a 911 system, and it fails to operate as it's supposed to operate, and it results in injuries to members of the public. In this case, you have a 911 system. It's not a mechanical failure, but it's a failure of a transmission of information. The information didn't go from one person to the other, just like the information in Donovan didn't go from one section to the other, albeit through mechanical means. With regard to the special duty exception, the special duty exception does not apply certainly to Will County and Lori Zahn because Mrs. Coleman was never under the direct and immediate control. The only thing that the plaintiff argues is that Lori Zahn told Mrs. Coleman, hold on, hold on while I transfer the call. That can't possibly have increased the risk of harm to Mrs. Coleman because we know it's an uncontested fact that by the time the call is transferred to Eric Johnson at Orland, Mrs. Coleman is no longer able to speak, which is a very unfortunate fact. But the reality is, whether Lori Zahn said hold on or not, Mrs. Coleman was never going to be in a position to hang up the phone and call somebody else or do anything else in reliance on that statement, so the special duty exception wouldn't apply. And I respectfully ask that you affirm the judgment of Judge Powers at the circuit court. Thank you. Thank you, Mr. Clancy. Mr. O'Keefe, you may reply. Thank you. Regarding the last point, if Lori Zahn would not have said hold on, with the time that went by, and we have four different sets of times in the record, with the time that went on, she could have called her husband, she could have called her sister in Alabama, she could have called a lot of other people to come and help, but she didn't. She relied on the call to hold on. There's a reasonable inference for summary judgment purpose right there. Mr. Ganolfo made a comment stating that on page 7 of our brief, we conceded this issue of negligence. That isn't true, but we'll refer to it, and I don't mean it in a disrespectful statement. I apologize. What we're talking about is the existence of duty, not the standard to which you hold the defendants responsible. That's clearly willful and wanton, but you must look at the negligence issue and foreseeability to see if there's a duty there first. Then the standard is what immunities apply. These are willful and wanton immunities. The Torres case, yes, the police did deter a neighbor from helping the third shooting victim come in. In our case, clearly we have the firemen stating to the neighbors, no one could do anything without the police, even though there were two cars there at the house, two neighbors saying, you can't leave. Both people have health problems, not just the man who left. The deposition testimony shows the neighbors said, stop. As the ambulance is leaving out the driveway, stop. Both people there have health problems. You can't leave. And then the firemen said erroneously, you can't do it without the police, which just isn't true, and no one did. And I think counsel on their brief said, Mr. Muelling's brief, page 36, he said I could have picked up a rock for the window, but no one did anything. The public duty rule, it could not have been intended to apply to every single public servant, particularly in a 911 setting. We're talking about state EPA employees, highway workers cutting grass on the side of the road. That's not the purpose of the public duty rule. And it fits with Donovan. Donovan is so different because in Donovan, you had the entire 911 system go down because of that relay switch and the battery backup only lasted four hours. No signals went out. And if in the Coleman case, if an antenna went down and Mrs. Coleman's signal to call for 911 couldn't get out, and that affected everyone in that area in East Joliet and Will County, then the Donovan case may apply. But not where they actually respond to the call as a voluntary undertaking, I think, take control in a 911 setting. It is true that everyone on this issue of control, it's troublesome for me. How do you say everyone in the chain had control? I think it starts, though, with the county and Laurie Zahn. Once they say hold on and dispatch the ambulances, I think it's just a logical extension of the control issue. And then I have to go back to American National Bank to say in a 911 setting, that issue of control, the Supreme Court said effectively, by allowing the case to proceed, that's not what you have in a 911 setting. And maybe because of the EMS Act that provides for it, I think provides a duty to perform your job, except not with willful and wanton conduct. Counsel's comment, Mr. Clancy's comment on voluntary once again. I'll say it one more time. That's fine, thank you. If you look at just the comments to 323A, you're going to see, and you have, it applies to everyone's undertaking, not that you had to have a fire department or a highway department. It applies to anyone who undertakes the services to help another that they know needs help. If you go back to the first point I was making, there are at least four different reasons to impose a duty here, and I really hope you do. Or at least, you know, please, by your decision, that might help a lot of us later in the state, addressing whether or not a person who calls 911 could ever have recourse if they're suffering a medical malady. Any questions? If not, thank you very much. Thank you, Mr. Oakley. Thank you, counsel, all, for your arguments in this matter this morning. It will be taken under advisement. Written disposition shall issue, and the court will stand adjourned.